UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

                          Plaintiff,

                                                        **DECISION AND ORDER**
        v.                                                     11-CR-366-A

MISAEL MONTALVO,

                          Defendant.

_____

Before the Court is Defendant Misael Montalvo's motion to modify his sentence pursuant to 18 U.S.C. Section 3582(c)(2). (Dkt. No. 448, 449). Specifically, Montalvo seeks a sentencing reduction based upon Guidelines Amendment 821, enacted November 1, 2023, which amended, as applicable here, Guideline §4A1.1(e) to eliminate the award of any "status points" under that Guideline where a defendant receives less than 7 criminal history points under subsection (a) through (d). The Government opposed (Dkt. No. 455), and Montalvo replied (Dkt No. 460). For the reasons set forth below, the motion is **DENIED**.

## I.    BACKGROUND

On March 16, 2015, Montalvo pled guilty to Count 1 of the Superseding Indictment, which charged him with a violation of Title 18, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute and to Distribute 5 Kilograms or More of Cocaine), for which the mandatory minimum term of imprisonment was 10 years, and the maximum possible sentence was a term of

imprisonment of life. (Dkt. No. 248, ¶1).  In their plea agreement, the parties, based on Montalvo's alleged involvement in the November 11, 2004, murders of Nelson and Miguel Comacho, agreed to disagree as to the application of the cross-reference to Guidelines § 2A1.1(a) (First Degree Murder), as provided for in Guidelines § 2D1.1(d). (Dkt. No. 248, ¶4(c)).  According to their plea agreement, if this Court found that the cross-reference applied, then Montalvo's sentencing range would be 292-365 months; if the cross-reference was found not apply, Montalvo's sentencing range would be the statutory mandatory minimum term of 120 months. (Dkt. No. 248, ¶9).

Following a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), the Court found that the cross-reference to Guidelines § 2A1.1(a) for first degree murder did not apply because the government had not established, by a preponderance of the evidence, that the murders occurred during, in preparation for, or in attempting to avoid responsibility for the offense of conviction. (Dkt. No. 372, p. 2).  Thus, Montalvo's sentencing "range" in this case was 120 months. Nevertheless, the Court found, by a preponderance of the evidence, that Montalvo planned and aided and abetted the armed burglary and robbery during which the murders occurred and that, therefore, an upward departure or variance was warranted to reflect Montalvo's role in the murders. (Dkt. No. 372, pp. 2-3). The evidence established that it was Montalvo who chose the location of the armed burglary and robbery because he knew Nelson and Miguel Comacho lived there; he recruited the individuals who ultimately committed the murders, planned the armed

burglary/robbery with them, drove them to the vicinity of the Comacho residence, and dropped them off knowing they were in possession of a loaded AK-47 and a baseball bat, and intending that such weapons would be used to commit the burglary and robbery. (Dkt. No. 372, pp. 11-12).

When the Presentence Report was prepared, it calculated Montalvo as having three criminal history points, including two points pursuant to Guidelines § 4A1.1(d) for having committed the offense in question while under a criminal justice sentence, specifically, a Conditional Discharge following a conviction for Driving while Ability Impaired by the Consumption of Alcohol, an infraction. (Dkt. No. 382, ¶ 53). With a total of three criminal history points, Montalvo was a Criminal History Category II, as opposed to the Criminal History Category I contemplated in the Plea Agreement. *Compare*, Dkt. No. 382, ¶ 54 with Dkt No. 248, ¶ 8. The advisory guidelines range at offense level 29, (the total offense level without application of the cross-reference to 2A1.1(a)), and Criminal History Category II was 120-121 months, considering the statutory mandatory minimum term of imprisonment of 10 years. (Dkt. No. 382, ¶ 59; Dkt. No. 452).

At Montalvo's sentencing, on December 1, 2020, this Court upwardly departed from Montalvo's otherwise applicable sentencing range of 120-121 months.  Such upward departure was pursuant to Guidelines § 5K2.21 (Dismissed and Uncharged Conduct) based on the dismissal, under the Plea Agreement, of two counts of Aiding and Abetting the Discharge of a Firearm Causing Death, in violation of Title 18, United States Code, § 924(c). (Dkt. No. 372, pp. 19-22). Upon departing

3

upward, this Court sentenced Montalvo to a term of imprisonment of 240 months.
(Dkt. Nos. 387, 452).

According to the Supplemental PSR, as of February 1, 2024, Montalvo will
have served approximately 146 months and 14 days of his sentence. (Dkt. No. 452,
¶6). The Supplemental PSR also states that Montalvo has earned 595 days of good
time credit. (Dkt. No. 452, ¶6). Montalvo's projected release date (without regard to
the instant motion for a sentence reduction) is May 1, 2029. (Dkt. No. 452, ¶ 7).

## II.    ANALYSIS

When presented with a motion to reduce a sentence pursuant to § 3582(c)(2),
the district court must first "determine the amended guideline range that would have
been applicable to the defendant if [the amendment] had been in effect at the time
the defendant was sentenced." *United States v. Zapatero*, 961 F.3d 123, 127 (2d Cir.
2020) (quoting U.S.S.G. § 1B1.1Q(b)(1)); *see also Dillon v. United States*, 560 U.S.
817, 827 (2010). Assuming that the resultant range is lower than that applicable at
the time of Montalvo's original sentencing, "a court may reduce the term of
imprisonment after considering the factors set forth in section 3553(a) and if such a
reduction is consistent with applicable policy statements issued by the Sentencing
Commission," which are contained in U.S.S.G. § 1B1.10. *United States v. Martin*,
974 F.3d 124, 136 (2d Cir. 2020)(citation omitted).

Here, the Government agrees with Montalvo's contention that the status-
points amendment portion of Amendment 821 applies and that application of such

amendment results in a reduction of Montalvo's Criminal History Category from Category II to I. (Dkt. No. 455, p.7).  Consequently, Montalvo argues that his Guidelines range of imprisonment has been reduced from 120 to 121 months to 120 to 120 months.

From Montalvo's perspective, the high-end of his applicable Guidelines range has been reduced by one month. *See*, *United States v. Gresham,* 482 Fed.App'x 822 (4th Cir. 2012)(holding that Guidelines Amendment "had the effect of reducing the high end of Gresham's Guidelines range by one month."); *see also*, *United States v. Gaynor*, 521 Fed. App'x 151, 155 (4th Cir. 2013) ("[p]ut succinctly, defendant's new Guidelines range of 120 to 120 months is lower than his 2009 Guidelines range of 120 to 135 months).[1]

Assuming *arguendo* that the Amendment at issue may appropriately be construed as lowering Montalvo's applicable Guidelines range such that he is otherwise eligible for a sentencing reduction, *see*, U.S.S.G. § 1B1.10(a)(2)(B) (sentence reduction not authorized where "[a]n amendment…does not have the

---

[1] It does not appear that the Second Circuit has ever expressly decided that a Guidelines Amendment—such as the one at issue here—which only has the effect of lowering the high-end of the applicable Guideline range is the sort of "lowering" of the range that gives rise to eligibility under §3582(c).  *See, United States v. Jimenez*, 670 Fed.App'x 2, 3 (2d Cir. 2016) ("[b]ecause we conclude that the district court did not abuse its discretion in denying [defendant]'s motion and adhering to its original sentence, we need not consider here whether [the] Amendment[]'s effective adjustment of [defendant]'s Guidelines range from 120 to 135 months' imprisonment to 120 months' imprisonment, the statutory minimum, constituted a "lowering" of his applicable Guidelines range, thereby making him eligible for a § 3582(c)(2) reduction."); *see also United States v. Johnson*, 732 F.3d 109, 114 (2d Cir. 2013) (noting that "it is arguable that a range of exactly 120 months is lower than a range of 120 to 135 months").

effect of lowering the defendant's applicable guideline range"), this Court

nevertheless declines to exercise its discretion to do so. Under step two of the *Dillon*

inquiry, *see, Dillon v. United States*, 560 U.S. at 827, the Court, upon consideration

of the factors set forth in 18 U.S.C § 3553(a) and all the circumstances presented,

declines to exercise its discretion to reduce Montalvo's sentence. *See United States*

*v. Mock*, 612 F.3d 133, 137 (2d Cir. 2010)("[i] f, and only if, a defendant is eligible for

a reduction in sentence under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10, then

the second step of the analytical framework set forth in *Dillon* requires the district

court 'to consider any applicable § 3553(a) factors and determine whether, in its

discretion, the reduction authorized by reference to the policies relevant at step one

is warranted in whole or in part under the particular circumstances of the case.'").

Based upon this Court's consideration of the § 3553(a) factors, this Court

determines that no sentencing reduction is warranted. As the Court found at the time

of the original sentencing in determining that an upward departure was called for,

Montalvo planned and aided and abetted an armed burglary and robbery during

which two brothers were murdered.  As the Court observed:

> [T]he Court finds that defendant Montalvo orchestrated the armed
> burglary and robbery during which the murders of the Camachos
> occurred. He selected the lo-cation of the armed burglary and robbery
> at the apartment at 879 Niagara Street, lower, because he knew the
> victims lived there and he was targeting the victims' property. He
> recruited Jonas, Hildalgo, and a juvenile, by relying on the assistance
> of others who knew them. He met with them at the Ortiz family's
> residence at 482 7th  Street, where he briefed the others and led most
> of the planning. He described the interior of the victims' two-bedroom
> apartment. He told them what to expect, including where to look for
> money, and that he thought no guns would be present.

The evening of November 11, 2004, while defendant Montalvo led planning among his co-defendants of the armed burglary and robbery in the Ortiz's kitchen at 482 7th Street, Jonas wiped off bullets from an AK-47 rifle that he was to carry during the burglary and robbery and then re-loaded the bullets into the clip for the rifle. Shortly thereafter, the defendant drove Jonas, Hildalgo, and the juvenile, with the loaded AK-47 rifle and an aluminum baseball bat, to the vicinity of the victims' apartment in his yellow automobile and dropped them off expecting them to use the AK-47 and baseball bat to commit the burglary and robbery. (Dkt. No. 372, pp.8-9).

The evidence also established that the murdered brothers were previously members of a Montalvo's drug trafficking conspiracy but had a falling out with Montalvo after Montalvo sexually assaulted one of the brother's 16-year-old girlfriend. (Dkt. No. 372, pp.15-16).  Based upon the nature and circumstances of the offense— including the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford deterrence, to protect the public— the Sentencing Guidelines themselves, and the need to avoid unwarranted sentencing disparities among codefendants, *see*, 18 U.S.C. §3553(a), the Court declines to exercise its discretion to reduce Montalvo's sentence of 240-months imprisonment.

## III.   **CONCLUSION**

For the reasons stated above, Defendant Misael Montalvo's motion to modify his

sentence pursuant to 18 U.S.C. Section 3582(c)(2) (Dkt. No. 448, 449) is **DENIED**.

   **IT IS SO ORDERED.**


*s/Richard J. Arcara*
                     
HONORABLE RICHARD J.  ARCARA
SENIOR U.S. DISTRICT JUDGE


Dated:  February 23, 2024
        Buffalo, New York.