UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

               Plaintiff,

     v.                                            **DECISION AND ORDER**
                                                          11-CR-366-RJA

MISAEL MONTALVO,

               Defendant.

───────────────────────────────

Pending before this Court is Defendant Misael Montalvo's *pro se* motion (Dkt. No. 411) for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, as well as Defendant's request to appoint counsel (*see* Dkt. No. 411, p. 5). The Government filed a response in opposition (Dkt. Nos. 444, 446), and Defendant did not file a reply. For the following reasons, Defendant's motion for a sentence reduction under the compassionate release statute is DENIED, as is his request to appoint counsel.

## BACKGROUND

On March 16, 2015, Defendant pleaded guilty, while represented by counsel, to Count 1 of the Superseding Indictment charging him with a violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Conspiracy to Possess with Intent to Distribute, and to Distribute, 5 Kilograms or More of Cocaine), for which the mandatory minimum term of imprisonment was 10 years, and the maximum possible sentence

was a term of imprisonment of life. Dkt. No. 248 (plea agreement), ¶ 1. In their plea agreement, the parties, based on Defendant's alleged involvement in the November 11, 2004, murders of Nelson and Miguel Camacho, agreed to disagree as to the application of the cross-reference to United States Sentencing Guideline ("Guideline" or "U.S.S.G.") § 2A1.1(a) (First Degree Murder), as provided for in Guideline § 2D1.1(d). Dkt. No. 248, ¶¶ 4(c), 6. According to their plea agreement, if this Court found that the cross-reference applied, then with a Criminal History Category ("CHC") I and Total Offense Level ("TOL") 40, as calculated by the parties, Defendant's sentencing range would be 292 to 365 months; if the Court found the cross-reference did not apply, with a TOL of 29, Defendant's range would be the statutory mandatory minimum term of 120 months. Dkt. No. 248, ¶ 9. As explained below, the Court ultimately determined that the appropriate sentence was 240 months in custody, a significant upward variance from the advisory Guidelines range calculated by the Court.

    The Court held a three-day hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), to resolve the sentencing dispute. On June 17, 2020, the Court issued a Decision and Order (Dkt. No. 372) finding that the cross-reference to § 2A1.1(a) for first degree murder did not apply because the Government had not established, by a preponderance of the evidence, that the murders occurred during, in preparation for, or in attempting to avoid responsibility for Defendant's drug conspiracy offense of conviction, and thus the murders did not constitute relevant conduct for purposes of calculating Defendant's Guidelines range. Dkt. No. 372, p. 2. Nevertheless, the Court found, by a preponderance of the evidence, that

Defendant planned, and aided and abetted, the armed burglary and robbery during which the murders occurred and that, therefore, an upward departure or variance was warranted to reflect Defendant's role in the murders. Dkt. No. 372, pp. 2-3, 10-11. Specifically, the Court found that the evidence established it was Defendant who "orchestrated the armed burglary and robbery during which the murders of the Comachos [sic] occurred." Dkt. No. 372, p. 8. He chose the location of the armed burglary and robbery because he knew Nelson and Miguel Camacho lived there; he recruited the individuals who ultimately committed the murders; he planned the armed burglary/robbery with them; and he drove them to the vicinity of the Camacho residence, and dropped them off knowing they were in possession of a loaded AK-47 rifle and an aluminum baseball bat—intending that such weapons would be used to commit the burglary and robbery. Dkt. No. 372, pp. 8-9, 11.

When the Presentence Investigation Report ("PSR") was prepared, it calculated a Criminal History Category ("CHC") II as opposed to the CHC I contemplated in the plea agreement. *Compare* Dkt. No. 382 (revised PSR), ¶ 54 *with* Dkt. No. 248, ¶ 8. The advisory Guidelines range at a TOL 29—that is, without application of the cross-reference to § 2A1.1(a)—and with a CHC II, was 120 to 121 months' imprisonment, accounting for the statutory mandatory minimum term of 10 years' imprisonment. Dkt. No. 382, ¶ 59; Dkt. No. 452 (supplemental PSR), p. 1.

In Defendant's sentencing memorandum (Dkt. No. 376), he requested a sentence of 120 months' incarceration and argued, among other things, that he suffered from various medical conditions including high blood pressure, gastrointestinal issues, and circulation issues "especially as related to his lower legs

3

and feet." He also asserted that the nature of his medical conditions placed him at greater risk of contracting COVID-19, and that Northeast Ohio Correctional Center ("NEOCC"), where he was detained at the time, had seen a "continuing increase in positive COVID-19 tests among the staff and inmates." Defendant further complained that while housed in local county and private jails during his period of pretrial detention, he had received inadequate medical care for his myriad health issues. Dkt. No. 376, p. 4. In Defendant's letter to the Court, he also stated that he suffered from "severe" diabetes with multiple complications, as well as carpal tunnel syndrome, arthritis, heart problems, and breathing complications—all for which he had been denied the medical attention he required. Dkt. No. 383, p. 3. The Defense submitted a copy of letters Defendant had received at NEOCC alerting him of positive COVID-19 cases at the facility (*see* Dkt. No. 385), as well as photographs of the condition of his right leg to support the contention that Defendant's "underlying medical conditions place[d] him at risk for life-threatening complications from COVID-19" (Dkt. No. 386).[1]

In stark contrast to Defendant's requested sentence, the Government asked that the Court impose a sentence within the range it had calculated in the plea agreement, that is, from 292 to 365 months' imprisonment. Dkt. No. 384, p. 1.

---

[1] Defendant's memorandum also stated the final PSR would "more fully explain [Defendant]'s current medical conditions." Dkt. No. 376, p. 4; *see* Dkt. No. 382, ¶¶ 79-81; *see also* Dkt. No. 398 (Sentencing Tr.), p. 17 (defense counsel asserted the Court should consider Defendant's "current medical condition" in formulating the appropriate sentence and argued it was clear that COVID-19 was a problem not only at NEOCC but also throughout the federal institutions where Defendant would be serving his sentence).

4

At Defendant's sentencing on December 1, 2020 (Dkt. No. 398 [Sentencing Tr.]), this Court upwardly varied pursuant to 18 U.S.C. § 3553(a) from Defendant's sentencing range of 120 to 121 months for the drug conspiracy offense. It sentenced Defendant to double the Guidelines range, that is, 240 months in custody, after considering Defendant's conduct that led to the dismissed counts charging a violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(j)(1), and 2 (discharge of a firearm during and in relation to a crime of violence or a drug-trafficking crime, causing death). *See* Dkt. Nos. 387, 452.

On December 17, 2020, Defendant filed a notice of appeal (Dkt. No. 389) from his conviction and his 240-month sentence. On appeal, Defendant argued that (1) the Court committed procedural error in concluding his conduct in connection with the dismissed charges (his involvement in the armed burglary and robbery that resulted in two deaths) was related to his offense of conviction, and then in considering this conduct in imposing its sentence; and (2) the Court's sentence was substantively unreasonable, particularly in light of his preexisting health conditions and the conditions of imprisonment during the COVID-19 pandemic.

On June 3, 2022, while his appeal was still pending, Defendant filed the instant motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), based on his "very poor physical health" that included various medical conditions the Federal Bureau of Prisons ("BOP") was failing to treat or was mismanaging and not adequately treating, the "very harsh conditions of incarceration" he was experiencing in the BOP during the COVID-19 pandemic, his elevated risk of complications should he contract COVID-19, and his purported rehabilitation and remorse.

5

Pursuant to Federal Rule of Criminal Procedure 37(a)(1), this Court elected to defer consideration of Defendant's motion for compassionate release until his appeal was decided by the Second Circuit. *See* Dkt. No. 412.

In November 2022, the Second Circuit issued a Mandate (Dkt. No. 415) affirming this Court's judgment, noting that this Court indicated its 240-month sentence was a variance, not a departure, meaning it was not required to find that Defendant's discharged conduct was related to the offense of conviction before factoring his conduct into the sentence. The Circuit also concluded that there was no abuse of discretion in imposing a 240-month sentence, "notwithstanding [Defendant]'s health issues," as this Court had acknowledged its receipt of Defendant's submission about COVID-19 conditions at NEOCC, and had commented on Defendant's health problems and health risks that were factored into its sentence. Upon receipt of the Mandate, this Court set a schedule for response and reply papers on Defendant's previously deferred motion for compassionate release.

In December 2023, Defendant filed a counseled motion (Dkt. No. 449) to modify his sentence pursuant to 18 U.S.C. § 3582(c)(2), due to retroactive amendment of the Guidelines, seeking a sentence reduction based upon the status-points portion of Amendment 821, enacted November 1, 2023. The Court denied Defendant's motion (Dkt. Nos. 463 & 464). It first found that the amendment applied and reduced Defendant's CHC from Category II to I. The Court reasoned, however, that even if the Amendment could be construed as lowering Defendant's applicable

Guidelines range such that he would be eligible for a sentencing reduction,[2] upon consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) and all the circumstances presented, it declined to exercise its discretion to reduce Defendant's sentence of 240 months' imprisonment.[3] Defendant appealed (Dkt. No. 465) the Court's denial of his 18 U.S.C. § 3582(c)(2) motion but that appeal was later dismissed (*see* Dkt. No. 479).

Defendant, who is 50 years old, is currently incarcerated at Federal Correctional Institution, Butner Medium II, in Butner, North Carolina, and his projected release date is March 20, 2028.[4]

## DISCUSSION

"The First Step Act's 'compassionate release' provision, 18 U.S.C. § 3582(c)(1)(A), provides an exception to the general rule that a court may not modify a term of imprisonment after it has been imposed." *United States v. Luke*, No. 14-CR-06089-FPG, 2024 U.S. Dist. LEXIS 72005, *3 (W.D.N.Y. Apr. 19, 2024) (internal citation omitted), *aff'd*, No. 24-1141, 2025 U.S. App. LEXIS 5477 (2d Cir. Mar. 10, 2025) (summary order). Under this provision, a court may reduce the term of imprisonment if, "after considering the factors set forth in section 3553(a)," the court

---

[2] A CHC I reduced the high-end of Defendant's Guidelines range by one month. Thus, the range became 120 months, which the Government argued was "essentially the same as the originally calculated range of 120-121 months." Dkt. No. 455, p. 8.

[3] The Court inherently rejected, then, Defendant's argument that his health issues, *i.e.*, "coronary artery disease, hypertension, type 2 diabetes, and arthritis among others," warranted a reduction. *See* Dkt. No. 460, pp. 4-5.

[4] *See Inmate Locator: Register Number* 21259-055, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited 2/23/2026).

7

finds that "extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i) (alterations omitted); *see United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam).  It is a defendant's burden to show that he or she is entitled to a sentence reduction under § 18 U.S.C. 3582(c)(1)(A).  *See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021) (per curiam).

Preliminarily, "absent waiver or forfeiture by the government" (*Keitt*, 21 F.4th at 71), a defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier" (18 U.S.C. § 3582(c)(1)(A)).  Here, before filing the instant motion on June 3, 2022, Defendant submitted two compassionate release requests administratively in the BOP, in July 2021 and in November 2021 (Dkt. No. 446, pp. 2110-2111, 2112-2113), and both requests were denied (Dkt. No. 411, pp. 42, 44) by the Warden of Federal Medical Center Devens, where Defendant was previously housed.  Based upon the Government's waiver of the exhaustion issue, the Court will consider Defendant's motion on the merits.

The Court need not determine whether Defendant has presented extraordinary and compelling circumstances for a sentence reduction because, even assuming he has, such reduction would be inconsistent with the § 3553(a) sentencing factors.  As the Second Circuit has recognized: "A motion under §

8

3582(c)(1)(A) must demonstrate both extraordinary and compelling reasons justifying release and that a sentence reduction is consistent with the sentencing factors set forth in § 3553(a), so a district court may deny a motion based solely on the latter without reaching the former." *United States v. McLean*, No. 22-966(L), 22-1176(CON), 22-1180(CON), 2023 U.S. App. LEXIS 31501, *2-3 (2d Cir. Nov. 29, 2023) (summary order) (citing *Keitt*, 21 F.4th at 73 ("[W]hen a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not also determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.")); *see United States v. Hunter*, No. 21-1773, 2022 U.S. App. LEXIS 17420, *3 (2d Cir. June 24, 2022) (summary order) ("If any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements.") (internal citations omitted).

Section 3553(a) requires courts to consider: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; the need "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant"; and "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A) through (C), (a)(6).

At Defendant's sentencing in December 2020, after stating that it had "spent about as much time on this case as [the Court had] ever in any case in 32 years" in

formulating a "fair and reasonable sentence under all the circumstances" (Dkt. No. 398, p. 31), the Court provided the following reasons—among others—for its substantial upward variance from the advisory Guideline range for the drug conspiracy offense of conviction:

> The defendant distributed controlled substances in his community over a very lengthy period of time…
>
> In determining the extent of the variance above the 120 to 121 months advisory range, the Court carefully considered the hypothetical multi-count analysis suggested by [the] Second Circuit decision in *Kim* as outlined earlier that suggested a 235 to 293 months advisory range of imprisonment.[5]
>
> The murders, especially the murder of Nelson Camacho, were heinous and their senseless brutality could have warranted a higher sentence. The Court has considered how little the 240[-] month sentence of imprisonment that the Court ha[s] imposed does not restore the grievous losses of the Camacho family and the community because of the senseless deaths of Nelson Camacho and Miguel Camacho.
>
> In addition, as mentioned earlier, the defendant became aware that an apparently innocent man was prosecuted by local authorities for the murders of the Camacho brothers and served approximately 10 years of imprisonment for the murders he did not commit until the charges were ultimately dismissed. This man also suffered the consequence of the defendant's efforts to evade responsibility for the felony murders underlying Counts 2 and 3 of the superseding indictment that are to be dismissed as part of the plea agreement.
>
> Nevertheless, both sides have made strong arguments for their positions and this Court has given due weight to the defendant having paid a high price for being detained for an inordinate amount of time and the ha[r]sher conditions that exist in local jails without the

---

[5] *See United States v. Kim*, 896 F.2d 678, 684-85 (2d Cir. 1990).

> facilities and programming available in the [BOP] facilities while he's been awaiting sentence.
>
> His apparent health problems and health risks that he face[s] from the COVID-19 [pandemic] in the event he contracts the virus before receiving a vaccine. In the Court's view, the 240-month sentence of imprisonment the Court has imposed is necessary to satisfy the purpose of sentencing in section 3553(a) of general deterrence, punishment and to promote respect for the law.

Dkt. No. 398, pp. 33-36.

Regarding "the history and characteristics of the defendant," the Court has twice before considered Defendant's many health concerns, as raised in the context of the COVID-19 pandemic and the conditions of incarceration during that period, and factored those circumstances into its sentencing determinations. The Court does this again, here. The Court also considers the fact that Defendant has only approximately two years remaining to serve on his incarceration sentence, and that he previously submitted proof of earning good time credit and actively participating in programming in the BOP. *See* Dkt. No. 460-1.

Once more, however, the Court reiterates that the severity of Defendant's offense conduct, his kilogram-level drug trafficking and his orchestration of an armed burglary and robbery that resulted in a double homicide, remains unchanged. As set forth above, the Court described such abhorrent offense conduct at length when it originally sentenced Defendant, which "could have warranted a higher sentence." In light of that factor, as well as the need to adequately deter criminal conduct, to protect the public, and to avoid unwarranted sentencing disparities, the Court

11

determines that a sentence of 240 months remains sufficient but not greater than necessary to fulfill the purposes of sentencing.

## CONCLUSION

As set forth above, because a sentence reduction would be inconsistent with the factors set forth in 18 U.S.C. § 3553(a), Defendant's motion for compassionate release (Dkt. No. 411) under 18 U.S.C. § 3582(c)(1)(A) is DENIED.  Furthermore, Defendant's request to appoint counsel is DENIED.  *See United States v. Feliz*, 2023 U.S. Dist. LEXIS 213357, *4-5 (S.D.N.Y. Nov. 30, 2023) ("Generally, a defendant has no right to the assistance of counsel in filing a motion for compassionate release... [I]t is within the district court's discretion whether to appoint counsel... In exercising that discretion, a district court may consider whether the defendant's compassionate release motion would likely be successful.") (internal quotation marks and citations omitted).

**IT IS SO ORDERED.**

        *s/Richard J. Arcara*
        HONORABLE RICHARD J. ARCARA
        UNITED STATES DISTRICT COURT

Dated:  February 23, 2026
       Buffalo, New York